UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGEL RIVERA, | |
| Plaintiff, | CIVIL ACTION NO. 1:22-cv-00673 |
| v. | (SAPORITO, J.) |
| MICHAEL KNAPP, *et al.*, | |
| Defendants. | |

MEMORANDUM

Plaintiff Angel Rivera filed a complaint alleging that six correctional officers and medical personnel at SCI-Rockview retaliated against him for filing grievances. Defendants now move for summary judgment (Doc. 28), arguing that Rivera failed to exhaust administrative remedies and cannot present sufficient evidence of retaliation. Because the record indicates genuine disputes of material fact on both issues, but also that three of the named defendants were not personally involved in any retaliation, the Court will grant defendants' motion in part.

I. LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251-52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a *prima facie* showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S.

at 331. Only once that prima facie showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A).

## II. MATERIAL FACTS[1]

Rivera suffers from PTSD and antisocial personality disorder (Rivera Dep. (Doc. 37-2), 9:5-11:13), and the DOC has classified him as "seriously mentally ill." (Doc. 37-1 at 2). At all times relevant, he was incarcerated in SCI-Rockview's "Behavioral Management Unit" (BMU), which accommodates inmates with mental illnesses who are deemed

---

[1] Rivera did not respond directly to defendants' statement of material facts, but filed a response brief along with further evidence. Where Rivera has failed to present competent evidence to demonstrate a genuine dispute of material fact, Defendants' fact statements are deemed admitted. *See* Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1. The Court also refers to evidence submitted by the parties but not directly cited in the briefs. *See* Fed. R. Civ. P. 56(c)(3).

unfit for the general population. The BMU classifies inmates in "phases" and grants them increasing privileges and autonomy based on their progress through the phases. After arriving at SCI-Rockview in May 2021, Rivera filed 18 grievances between September 27, 2021 and December 6, 2021, on topics such as COVID-19 protocols, library access, and disputes with staff, including the defendants in this case. (Doc. 37-3).

The case essentially turns on the parties' differing accounts of the events of December 22, 2021, when Rivera was issued a misconduct charge for "threatening an employee . . . with bodily harm." The charge, written by defendant C.O. Steberger, indicates that when Steberger approached Rivera's cell to give him a meal tray, Rivera "began screaming and stated 'Open this [f***ing] door, open the [f***ing] door now and we will see what you're about, you're not cut like that and if you open the door you'll find that out. I'll take out you, Anna and Hayles right now.'" After Steberger left Rivera's cell, Rivera "continued to scream and make threatening remarks" toward Steberger. (Doc. 37-6).

Rivera, by his own affidavit, disputes this version of events. Rivera avers that at approximately 10:50 a.m., defendant Michael Knapp and

another officer "approached" Rivera and asked if he would "sign off on" (i.e., withdraw) various grievances and complaints against defendants Steberger, Knapp, David Durst, C.O. Anna, and C.O. Hayles. Rivera refused. Knapp "informed [Rivera] that he was going to launch a campaign of harassment against him," and have his "phase taken" for verbal abuse (i.e., give Rivera a more restrictive status within the BMU). Knapp said that he did not need "evidence" of verbal abuse, that all he needed was for a staff member to say it happened, and that he had already directed Steberger to "write [Rivera] up on a frivolous misconduct," which Hayles and Anna would corroborate. Knapp said that Steberger would visit Rivera in "a few minutes" to give him a chance to change his mind, but when Steberger arrived, Rivera again refused to withdraw the grievances. (Rivera Aff. (Doc. 41-3), ¶¶ 4-9).

Later that day, Rivera was placed on "accountability status," which is a form of short-term solitary confinement with varying restrictions based on the inmate's behavior. Although the "restriction form" indicates that "restrictions MUST relate to identified problem behaviors," Rivera was denied access to a telephone, reading material, showers, "cell cleaning," and "exercise," among others. (Doc. 37-7). Rivera avers that

defendant Durst told him that Durst and Knapp had decided on the restrictions together and "the only thing [Durst] cared about was that [Rivera learned his] lesson about filing grievances against them." (Rivera Aff. ¶ 12). Rivera was also demoted from "Phase 2" to "Phase 2 Modified." As a result of this demotion, he was denied access to the dayroom, lost his job within the prison, and had to eat and exercise in his own cell, among other restrictions. (Rivera Dep. 58:8-59:12).

Rivera filed two grievances directed to the events of December 22. The prison grievance system operates through three ascending levels of review: initial review by a Grievance Officer, appeal to the Facility Manager, and final review by the Secretary's Office of Inmate Grievances and Appeals. Rivera's grievances were denied on initial review as "frivolous." The grievance officer reported that he interviewed the staff implicated in the grievances and was "unable to verify" Rivera's allegations. The responses indicate that Rivera had been found guilty of the misconduct charge after a hearing, and that certain restrictions were imposed to prevent Rivera from "constructing weapons," since he was found to have threatened staff with injury. (Doc. 37-5 at 76, 83).

On appeal, Rivera was denied relief by the Facility Manager. Rivera

prepared appeals to final review for both grievances and placed them "in a closed envelope with attached cash slips for processing." He gave the envelope to Steberger, but never received confirmation that the grievances were processed. (Rivera Aff. ¶ 13). He then made a series of written inquires to prison employees asking what happened to the appeals. The responses indicated that the employees were unaware of the mailings or that no such mailings were processed. (Docs. 41-6, 41-7, 41-8). Ultimately, the DOC's records indicate that Rivera's grievances were not appealed to final review.

### III. DISCUSSION

#### A. Exhaustion of Administrative Remedies

Defendants request summary judgment on the basis that Rivera has not exhausted available administrative remedies. Under the Prison Litigation Reform Act ("PLRA"), prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they may file suit in federal court. 42 U.S.C. § 1997e(a). The PLRA requires proper exhaustion, meaning plaintiffs must administratively grieve their claims in accordance with the procedural rules of the prison in which they are incarcerated. *Downey v. Pa. Dep't of*

*Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

A prisoner is only required to exhaust administrative remedies that are "available." *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018) (citing *Woodford*, 548 U.S. at 93). An administrative remedy is unavailable, and administrative exhaustion is thus excused, in three situations: "(1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* at 266-67 (quoting *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)).

Here, Rivera presents evidence that he attempted to appeal his grievance to final review, but the mailing was never sent for reasons beyond his control. His inquiries to prison employees, asking what happened to his mailing, support the same inference. Defendants do not argue that Rivera followed the wrong procedure for mailing a grievance

appeal, nor is that apparent from the grievance policy. Defendants' exhaustion argument is premised on the fact that the DOC's own records show that no appeal was properly exhausted.[2] However, a remedy may be unavailable if the process is thwarted because the grievances are mishandled or not properly processed by the prison staff. *See, e.g., Coit v. Luther*, No. 1:19-CV-02036, 2021 WL 5792697, at *9 (M.D. Pa. Dec. 7, 2021); *Abney v. Younker*, No. 1:13-CV-1418, 2018 WL 398323, at *15-16 (M.D. Pa. Jan. 12, 2018); *Lane v. Rozum*, No. 3:13-CV-268-KRG-KAP, 2016 WL 1212782, at *6 (W.D. Pa. Mar. 11, 2016), report and recommendation adopted, No. 3:13-CV-268-KRG-KAP, 2016 WL 1259102 (W.D. Pa. Mar. 28, 2016). The Court finds that Rivera has established a genuine issue of fact as to whether any further administrative remedy was available to him, and therefore denies summary judgment on this

---

[2] Both of Rivera's appeals to the Facility Manager were denied as untimely because they were received more than 15 working days after the initial grievance was denied. (Doc. 37-5 at 73, 80). It is unclear when Rivera submitted the appeals, and the grievance policy appears ambiguous as to whether grievances must be "received," or merely sent, within 15 working days. *See* (Doc. 37-4 at 22). Absent further argument from defendants, the Court will not grant summary judgment on this basis. *See Nyhuis v. Reno*, 204 F.3d 65, 77-78 (3d Cir. 2000) (noting that failure to exhaust can be excused by "substantial" compliance with the grievance rules).

ground.

## B. Retaliation

Rivera proceeds on claims of retaliation in violation of the First Amendment under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a Section 1983 claim, a plaintiff must establish that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). "[E]ach named defendant must be shown . . . to have been personally involved in the events or occurrences which underlie a claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As explained by the Third Circuit Court of Appeals:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal

> involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

To state a prima facie case of First Amendment retaliation, a prisoner must show that (1) he was engaged in constitutionally protected conduct, (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action. *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (citations and quotations omitted). Typically, the plaintiff must show "unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action," or "a pattern of antagonism coupled with timing to establish a causal link." *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016). In some cases, causation can be established "from the evidence gleaned from the record as a whole." *Id*. Even if a prisoner demonstrates causation, the prison officials may still prevail by proving that they would have made the same decision absent the protected

conduct for reasons reasonably related to a legitimate penological interest. *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001). This is referred to as the "same decision defense." *Watson*, 834 F.3d at 422.

Initially, the defendants argue that Rivera has not shown the personal involvement of defendants Durst, Myers, Anna, and Hayles. Rivera's affidavit indicated that Durst participated in devising the accountability status restrictions. However, the record is devoid of evidence that Myers, Anna, or Hayles took any adverse action against Rivera.[3] Accordingly, summary judgment will be granted to those three defendants. As for the remaining defendants, the movants concede that Rivera's grievances were constitutionally protected conduct but seek summary judgment on the basis that their actions against him were not "adverse actions," and that he has failed to show that any such action was the result of his grievances.

The potential adverse actions are Rivera's disciplinary charge, his placement on "accountability status," and his demotion to a more

---

[3] Although Rivera alleges that Steberger told him Anna and Hayles would corroborate Steberger's account of the verbal abuse, the record does not indicate that they ultimately contributed to the misconduct charge or were otherwise involved in his discipline.

restrictive phase within the BMU.  Defendants argue that Rivera is in a "specialized program, and moving through that program in either direction is a normal event while incarcerated." But they have not presented any evidence to that effect, and in any event, that would not determine whether their actions were adverse. Rather, the test is whether the actions would "deter a person of ordinary firmness from exercising his First Amendment rights." *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quotation and citation omitted). "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than de minimis.'" *Watson*, 834 F.3d at 423 (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original). "[B]eing placed in lockdown, being moved to restricted housing, and being issued misconduct charges are more than 'de minimis' adverse actions." *See Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (per curiam) (quoting *McKee*, 436 F.3d at 170). By this standard, Rivera has raised a genuine issue of fact as to whether his disciplinary charge, and the attendant consequences, constituted adverse actions.

Next, the Court considers whether Rivera's grievances were a "substantial or motivating factor" in the defendants' actions. Defendants

argue that Rivera's evidence of retaliation is "essentially just his own self-serving testimony, purporting a series of inculpatory comments to various Defendants without any extrinisic [sic] evidence of this." It is well-established that "conclusory, self-serving" testimony, via affidavit or deposition, is insufficient to defeat summary judgment. *See Irving v. Chester Water Auth.*, 439 F. App'x 125, 127 (3d Cir. 2011); *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (citations omitted). However, "the testimony of a litigant will almost always be self-serving since few litigants will knowingly volunteer statements that are prejudicial to their case . . . [T]hat has never meant that a litigant's evidence must be categorically rejected by the fact finder." *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 321 n. 2 (3d Cir. 2014). When a non-movant attempts to defeat summary judgment through their own testimony, courts consider whether that testimony, "juxtaposed with the other evidence, is sufficient for a rational factfinder to credit [it] despite its self-serving nature." *See Hricenak v. Mickey Truck Bodies*, No. 4:21-CV-00694, 2024 WL 1604650, at *2 (M.D. Pa. Apr. 12, 2024) (citations omitted); *Whitnum v. Meadows at Stroud for Nursing & Rehab.*, LLC, No. 3:18-CV-02137, 2020 WL 7773906, at *4 (M.D. Pa. Dec.

30, 2020).

Rivera's affidavit, although self-serving, is not "conclusory"; it lists specific factual allegations of statements[4] and actions that, if taken as true, support a reasonable inference that he was retaliated against for filing grievances. Rivera's "accountability status" restrictions could support the same inference, given that he was deprived of privileges apparently unrelated to the charge of threatening staff.[5] Ultimately, the overall record lacks the "other evidence" required to disregard Rivera's testimony and affidavit. Any such finding would be premised on inferences about witness credibility, which are not permitted at the summary judgment stage. *See Doe v. Pennsylvania State Univ.*, No. 4:21-CV-01862, 2023 WL 7287217, at \*5 (M.D. Pa. Nov. 3, 2023) (where "the bulk of the 'other evidence' are deposition testimony and affidavits," the

---

[4] It appears that most, if not all the relevant statements would be admissible at trial to demonstrate the declarants' state of mind or as admissions by a party opponent. *See* Fed. R. Evid. 801(d)(2), 803(3); *Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016) ("[H]earsay statements can be considered on a motion for summary judgment if they are capable of being admissible at trial.").

[5] While the grievance officer indicated that the restrictions were imposed to prevent Rivera from fashioning a weapon, a reasonable juror could find that some of them, such as the denial of showers and exercise, were not imposed for that purpose.

court cannot disregard the plaintiff's self-serving testimony in favor of the defendant's).

The remaining defendants would still be entitled to summary judgment if they demonstrated that, regardless of any evidence of retaliation, they would have charged and disciplined Rivera for reasons reasonably related to a legitimate penological interest. *Rauser*, 241 F.3d at 334. However, they have not met that burden.

The grievance paperwork indicates that Rivera was found guilty after a disciplinary hearing, which is generally considered "strong evidence that the misconduct report was issued for a legitimate penological reason." *Drumgo v. Reese*, No. 3:20-CV-02434, 2022 WL 4295442, at *15 (M.D. Pa. May 20, 2022) (citations omitted). However, to foreclose a retaliation claim, a disciplinary finding must be accompanied by "a meaningful written statement of the evidence relied on and the reasons for the action taken." *Williams v. Folino*, 664 F. App'x 144, 148-49 (3d Cir. 2016) (unpublished). The ultimate question is whether the violation is "so 'clear and overt' . . . that [Rivera] would have been written

up if he had not also" engaged in protected conduct.[6] *See Watson*, 834 F.3d at 426 (quoting *Carter v. McGrady*, 292 F.3d 152, 158-59 (3d Cir. 2002)).

Other than the passing reference to the hearing in the grievance paperwork, the record is silent as to the evidence presented and the basis for the guilty finding. The grievance officer investigated Rivera's allegations and was "unable to verify" them after interviewing staff. But this investigation occurred *after* the alleged retaliation, and there is no showing that the defendants relied on witness interviews when they took the allegedly adverse actions. Clearly, Steberger's allegations alone *could* have motivated the defendants to discipline Rivera in service of a legitimate penological interest, but the defendants have not met their burden at the summary judgment stage to "prove" that they did so. *See Rauser*, 241 F.3d at 333-34; *Watson*, 834 F.3d at 426 ("[A] plaintiff can make out a retaliation claim even though the charge against him may

---

[6] *See also Burton v. Wetzel*, No. 1:19-CV-01574, 2023 WL 5831848, at *7 (M.D. Pa. Sept. 8, 2023) ("We reject the defendants' suggestion that anytime a prisoner is found guilty of a misconduct and there is a meaningful statement of the evidence and the reasons for that finding, there is a quantum of evidence that necessarily satisfies the same decision defense."); *Ivy v. Johnson*, No. 1:18-CV-1506, 2022 WL 3647264, at *11 (M.D. Pa. Aug. 24, 2022).

have been factually supported.").

## IV. CONCLUSION

For the reasons described above, the Court will grant summary judgment to defendants Myers, Anna, and Hayles, but deny summary judgment to defendants Knapp, Steberger, and Durst. An appropriate order follows.

Dated: January 7, 2025         *s/Joseph F. Saporito, Jr.*
                               JOSEPH F. SAPORITO, JR.
                               United States District Judge